Good morning, members of the court. My name is Frank Meade. I represent the appellant Ann Johnston, who is present in the gallery today. We are asking the panel today to reverse the district court's grant of summary judgment on count three of Ms. Johnston's amended complaint alleging retaliation. The basis for our request, it's not new. There's, we believe, a mistake that the district court made that's been made in the past. And we cite in our brief the Hashimoto decision in which Ms. Johnston engaged in both opposition and participation activity in the workplace and was facing retaliation as a result of that. Counsel, I don't understand how taking Xeroxes of people's applications for post office boxes out of the post office could be part of her case. I don't understand why she'd even need them to litigate her case. And to understand that question, Judge, what you have to do is you have to back up to what she was enduring up to that time. She said people were harassing her by putting them in the wrong pile. Correct. So that she wouldn't process them properly and it would look like it was her fault when it wasn't because someone had moved them. But Xeroxing the documents and taking them with her doesn't help prove that. I don't get why she would do it. And what I'd like to do is back the court up even a step or two before that. She engaged in participation activity by testifying on behalf of another employee for the post office before the EEOC. As a result of that, she began experiencing retaliation. She would come to work and her computer would be unplugged. Things would be disheveled. She's sensitive to perfumes and aromas. Somebody was pouring perfume in her locker. You said in your brief somebody poured perfume, but she didn't say that. What she said, I can't remember if it was deposition or declaration. She said someone sprayed perfume into the vents, sprayed it on the surface of her locker, and some of it went through the vents. That's different from pouring. It just seems like an exaggeration. But whether it may be at the end of the day, Judge, if you have a sensitivity to it, it could be a distinction without a difference. And what I mean by that is if it's an act of retaliation, if it's harassment in response to her participating in protected activity, it's a problem that she – And that's enough? Well, you have to look at it in totality of the circumstances, and that's why I'm trying to – But if some other lady at the post office just hates her because a co-employee, no one was ever identified as doing this harassment, just hates her because of the way she is generally or even conceivably because she took the side she did in that other employee's case and turns her back on her whenever she sees her, won't eat with her in the break room, that's enough? No. No, that's – and I don't even know that that would be conduct that could be considered even retaliatory, quite frankly. How is this different? Well, when you look at the totality of the circumstances, and I think the body of case law that my colleague and I have been throwing around for years – Unplugging a computer? I'm sorry? Unplugging a computer? Well, and you referenced the EEOC affidavit that was attached to the statement of facts, the response to the motion for summary judgment down in the district court. It's a 27, 28-page document that alleges the – what Ms. Johnson believed were the instances of harassment that she was enduring. But when you have these things as a whole, Judge, she's a 20-year employee and wasn't having any issues. She testifies in an EEOC proceeding on behalf of another employee, and almost instantly she's facing what may seem, if you take them in a vacuum, inconsequential. But unplugging somebody's computer, she – She can't identify who did it or why they did it. It's pretty iffy whether it's even retaliatory. And if it is retaliatory, I wonder if it falls in that class of trivia. It's not enough. I mean, if I came into the office and my computer wasn't booted up and I said, gee, is somebody retaliating against me for this decision, they'd think I was losing it. Ms. Johnson processed payroll. If her computer wasn't working, that was not inconsequential. People weren't going to get paid. Well, you can plug it in. True, but there were – it was a consistent pattern, Judge. And you would ask me, you started by asking about the pattern. She's facing – or whether the Xerox copies, whether that's enough. Is that enough? It doesn't prove that the originals were put in a different tray from where they should have been. No, but what it does is what Ms. Johnson was hearing consistently when she would go to a supervisor and say, somebody's unplugging my computer, I processed payroll, that's important. You said something about not being a big girl. Don't know who it is. Be a big girl, grow up, you know, go deal with it. She has sensitivities to the perfume issues, whether they're sprayed through the vents, poured. It's another issue that she has to deal with. Then she reports it and she's told, we don't have enough evidence, go back to work. Let me ask you this, counsel. Even if we agree with you that there is this distinction between the opposition clause in Title VII and the participation clause and that her conduct would then be protected participation activities, because I'm inclined to agree with you that it's participation activity and that that distinction was lost on the district court, in that she had testified on behalf of a coworker and had initiated EEOC proceedings of her own before this seemingly small incidence, but they pile up into the total picture. So even if we're with you on all of that and that the district court had misanalyzed it at that step, how do you get past the pretext issue? She was in possession of confidential documents or mail essentially belonging to other people and what is the postal office supposed to do? And that's an excellent question, Judge. And the answer is that's where we have to go into this analysis of the different case law, whether it's O'Day, McDonnell-Douglas, some of the cases that my colleague... Let's go to McDonnell-Douglas. When you look at the difference in the conduct where somebody is surreptitiously gathering confidential, potentially proprietary documents that belong to the employer, don't belong... and for which this person has no business purpose and then is disclosing them to a third party. And in some of these cases that we've talked about, we make this point in the reply brief I think in particular, we don't have somebody going in, routing, rifling through a supervisor's desk after hours at night, looking for documents related to other employees and then disclosing them to third parties. These were documents, originals which were on her desk. She made copies as part because she continually was told we don't have enough evidence. She makes handwritten notes onto those documents so that she can remember how she's putting this all together because she's... Counsel, I'm just... But how does removing them from the work premises relate at all to, you know, her being able to prove the retaliation? Having... she's still... and that's what she's being told. And then, Judge, your question goes to the problem she's having right at this time. She's being told you don't have enough evidence. So there are documents that are misplaced on her desk and she's trying to determine how am I going to accumulate this evidence. She doesn't proactively go out and take the documents from a place that she doesn't have access to or isn't supposed to be seen. But she's not supposed to take them off-site, right? So what you would need to show, assuming we extended the O'Day test to this context, you would need to show that her act of removing them from the work premises in violation of postal policy... Correct. ...was somehow related in some way, right, to her proving the retaliation, I guess.  Correct. And my colleague... I didn't handle the case in the district court, but my colleague below who handled the matter in the response to the government's motion for summary judgment, I think it's question of fact... it spells it out. Question of fact 36 explains what I've been trying to probably and artfully convey, is she is experiencing these acts of retaliation that she is unable to prove. So she is attempting to gather the evidence that she needs in order to have somebody pay attention to what's going on to her in the workplace. I know she needed to gather evidence because she hadn't succeeded in proving them. Her supervisor just said they were too trivial to bother with. I mean, you reach for your stapler on the right side of the desk and it's on the left side of the desk, and you say, oh, somebody moved my stapler. That was one of her things. Somebody moved her office supplies on her desk. It wasn't that she couldn't prove it. It was that, as he put it, or she, I can't remember the sex, didn't want to be a babysitter. And this was too trivial to make an investigation of or do anything about. I think if you engage, I don't think that there is a more important participation type activity that you as an employee can... Participation, I'm not sure I ever heard an answer to my question. Assuming it's participation activity, how do you get past pretext to show essentially that the employer used this as an excuse without a valid reason to basically then terminate her? The employer said that they terminated her for failure to safeguard confidential documents. How is that in any way pretextual? And I understand your question now, Judge. And the answer is at the time that they terminated her, they were aware of her explanation that she had these documents in her possession because she wasn't able to prove instances of retaliation. So at the time that they made the decision to terminate her, they had that information 60, 90 days. They knew that. So if they terminate her before she provides that explanation, then there's no argument for pretext. But the moment she articulates prior to her termination, this is why I was in possession of these documents, they have, they're on notice. All right. We've taken you over time. Thank you very much. Thank you very much. Peter Lantga for the United States Postal Service, Your Honor. May it please the Court. Your Honors, the circuit has held that an employee is never protected by Title VII when she violates legitimate company rules, knowingly disobeys company orders, disrupts her work environment, or willfully interferes with the attainment of her employer's goals. Numerous cases set forth in the United States brief at page 23 set that, set forth that principle. In other words, Your Honor, you can't disguise improper conduct as protected activity and hope to be shielded from normal, rational employment practices. Counsel, there was one thing here that made me think pretext, and that is they fire her for removing confidential documents. And I looked at documents, a couple of people's applications for post office boxes, and it seems kind of trivial. And what's more, it wasn't her idea to reveal them to the cop. It was the cop's idea to stop her and look through her car. I thought in all likelihood they fired her because she was nuts or seen nuts because she got caught by a cop driving around at 2.30 in the morning with her license plate covered with a piece of cardboard and a rock wrapped in a napkin. And it kind of looked like somebody getting ready to throw a rock through somebody's window and not wanting the license plate to be identified. And instead they fire her because she has a couple of applications for post office boxes in the car. I don't know if that kind of pretext matters because that's not a pretext for firing her on account of testifying in an EEO case. But how come that doesn't even come up? Is there any evidence or testimony or explanation? As to the real reason that they fired her, I believe, Your Honor, inasmuch as you may have tapped on my desired theme, if this case would have gone to trial, that the Postal Service and the record evidence states in numerous occasions that the standards set forth in my brief at pages 10 and 11, the Postal Service vigorously protects this private information, anyone who's done Privacy Act litigation. It's not all that private. I was thinking as soon as I read about that, if you've got a personal injury case or something and you want to find who's behind a company that just has a doing business as name, you can subpoena the document from the post office that shows who rented the doing business under name post office box. Correct, Your Honor, but that's pursuant to court order, not pursuant to someone just removing them. We don't know if she broke in, much as Mr. O'Day, and we don't know if she just removed them from her workstation. What we do know is that the employee labor relations manual, postal regulatory standards, the union contract, all of which that Ms. Johnson was a party to, state that you do not remove this information, this sacrosanct almost information from the post office. The reason that people have a post office box is because they don't want their home address getting out there, and that she took that from the post office. Most people haven't because there's no delivery in their cabin in the woods. I'm thinking of colleagues at my own office, Your Honor, but correct. And actually, we don't need to inquire why most people have a post office box. The fact of the matter is they don't want people to know their address. They didn't have delivery room. I would draw your court's attention to Judge Goodwin's factual findings at pages 11 and 12 of his order, where Judge Goodwin himself, he did a factual determination stating that plaintiff did not provide what he put, a scintilla of evidence, that the information on these documents in any way supported her claim of discrimination or retaliation. Some deference has to be given to a factual finding, Your Honor. I want to address also a line of question that came up during Mr. Mead's opening statement. Plaintiff is trying to make a multi-step process to pigeonhole her termination into the participatory activity of testifying on behalf of a friend or a colleague at an initial EEO stage. If you look at this court's decision in the Vasconcellos v. Mead's case, 907F2-111, it says that the statutory language of the participation clause is specifically limited to proceedings under this chapter. So the U.S. Postal Service could not have fired the plaintiff for participating in an investigation, such as talking to an EEO counselor, for going to an EEO proceeding, for attending a hearing. But what they're trying to do in this case is what the court in Silver, O'Day, Wrighton, and numerous other cases cited in the United States Brief is by saying, well, that is just a shield that allows all sorts of activity around to protect it. So just because I'm in a hearing, I can do whatever I want. There were numerous examples. Were these documents to have any merit whatsoever? Which they weren't. She could have easily said an 8.5 by 11 piece of paper that looks like this was moved. But were that document to have any precedential value? She had counsel at the administrative stage. There's administrative subpoenas in the EEO process. The EEO counselor would have had them. Let me ask you this, Counsel. In this case, as I read the district court opinion, it really conflated oppositional activities with participation activities. And I think there is a distinction in the law. It may not have been as well laid out in the Ninth Circuit jurisprudence, but certainly a lot of other circuits have addressed it and have explained what situation qualified as oppositional activities versus participation activities. And generally, what I liked about some of those cases is the distinction between activities that occur before Title VII proceedings are instituted versus after, with activities occurring after Title VII proceedings being instituted, falling under the participation clause. There wasn't any analysis like that in the court below in this case. Two points, Your Honor. And I raised those cases in the middle of my brief, the before and after analysis. One, the United States still contends that argument was waived because that analysis was never set forth. I would draw your attention to the underlying response brief at page 6. I don't think it's waived. In her complaint, she indicated that the possession of the documents was discovered after she had already contacted the EEOC and after she had already testified for her coworker and EEOC proceedings. And in her opposition to the summary judgment motion, she made the specific argument that she copied and retained the documents in order to oppose unlawful discrimination or participate in proceedings to redress such practices. So let's get past the waiver and let's get to the merits of it. And I know you're running short on time, but I want you to talk about just specifically as to protected activities, how this case differs from the Vaughn case, which I think came out of the Tenth Circuit. That's the one where the employee basically disclosed unredacted medical records. And the court, the Tenth Circuit, found that Ms. Vaughn engaged in protected activities within the meaning of Title VII. So how does this differ from that with her copying and retaining confidential postal office records in an attempt to proceed with EEOC proceedings? Because of the contents of the records themselves, Your Honor. Again, I would give deference to Judge Goodwin's findings of fact. I would also note that if you look at the Miswender case. I'm not sure I understand. I may be mixing up one judge with another. But didn't this come up on summary judgment? Yes, sir. There's no such thing as a finding of fact on summary judgment. I think that it wasn't a finding of fact. The judge, I wouldn't call anything. The finding is that there's no genuine issue as to a particular fact. Correct. Correct. The documents were. And that's reviewed de novo. Yes, Your Honor, it is. I would draw Your Honor, and then your question, ma'am. The documents were contained, the actual documents at Exhibit 15 in my statement of facts, which are in the supplemental excerpts of record if you want to look at them. And I believe what. I'm not sure I understand that it's the nature of the document. So in Vaughn, it was confidential medical records. In this case, it's essentially confidential postal records. And so what did you mean when you say that it has to do with the content of the records and drawing distinction between this case and the facts of Vaughn? I would try to draw a fine-line distinction. That case, there was another case where the court had found that a nurse had an incumbent duty to alert the public or protect patients for inadequate care. And I believe that's the Vaughn case, and a lot of the cases gel together factually, which would be different from, say, the O'Day case or the Hashimoto case or the Wrighton case or the Silver case, whereas they found that that plaintiff was almost some kind of whistleblower. This information has to get out. And it even has to get out sometimes. In that case, it's a patient care case. In other cases, there was the case out of Arizona where it was a court employee, and one of the Arizona Appellate Court judges issued a memorandum, don't talk to the press about this case, and she bled that information out. And they actually found that that was protected. This case is quite different. The O'Day case, which is this Court's leading authority, found that a totem list unrelated to Mr. O'Day's claim of discrimination was not protected. The O'Day case relied on Wright, which relied on – may I finish, Your Honor? Yes. Which relied on a First Circuit case, which went into the legislative history, which said that the participation opposition clause was in no way meant to hamper the legitimate business runnings of an operation. I would, again, in closing, defer to Your Honor's questions to my learned counsel on issues of pretext, point to the evidence in the record that different individuals terminated her, and point to, perhaps not findings or facts reviewed de novo, but the Any further questions, Your Honor? You're seated. All right. Thank you very much for your argument. I think I didn't fill up my time. I didn't know if the panel had any additional questions. Anything? No. Thank you very much. Thank you very much. All right.
judges: Kleinfeld, Nguyen, Watford